UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE JOSEPH P. ADDABBO FAMILY HEALTH
CENTER, INC. on behalf and by PETER NELSON,
IN HIS CAPACITY AS CEO AND EX-OFFICIO
MEMBER OF THE BOARD OF DIRECTORS
and SANFORD BERNSTEIN, IN HIS CAPACITY
as TREASURER and MEMBER OF THE BOARD
OF DIRECTORSOF THE BOARD OF DIRECTORS
OF THE JOSEPH P. ADDABBO FAMILY
HEALTH CENTER, INC.

CV 12 - 2985

                              Plaintiffs,                          Affidavit in Support of
            -against-                                             Order to Show Cause

SYLVESTER OKONKWO, BETTY LEON,                          _____CV_____
GLENN DIRESTO, DIANNE MOORE, CAMILLE
EADDY, SAYWALAH KESSELLY, CALDINE
REY, HARVEY GORDON, MERRILL WRIGHT,                    AMON, CH.J.
BISHOP ALONZO BROWN, EACH INDIVIDUALLY
AND IN THEIR CAPACITIES AS BOARD MEMBERS               REYES, M.J
OF THE JOSEPH P. ADDABBO FAMILIY HEALTH
CENTER, INC.
                              Defendants.
------------------------------------------------------------X
STATE OF NEW YORK)
                              ) ss.:
COUNTY OF KINGS    )

Peter Nelson, being duly sworn, deposes and says:

1.      I am the current Chief Executive Officer and Ex-Officio Board Member of THE

JOSEPH P. ADDABBO FAMILY HEALTH CENTER, INC. a position I have faithfully

held and served since 1997.

2.      THE JOSEPH P. ADDABBO FAMILY HEALTH CENTER, INC. ("Addabbo")

a New York Not for Profit Organization and Federally Qualified Health Center was

formed in 1986 with the primary mission of "advising and assisting the residents of Far

Rockaway in developing policies for comprehensive health program for the poor, the

1

medically indigent, and other persons in need of comprehensive health services." Since its formation, Addabbo has expanded its operations to clinics located in other locations throughout the City of New York.

3. I make this affidavit in support of the instant Order to Show Cause seeking a temporary restraining order (the "TRO"), maintaining the status quo by enjoining the current Addabbo Board of Directors (the "Board") from making any decisions, resolutions, and/or holding or calling any matter to vote, including but not limited to the adoption of any protocols and or policies related to the hiring or firing of Addabbo executives and/or employees and/or the negotiating and/or entering into any agreements on behalf of Addabbo until further order of this Court, and/or taking any actions that usurp my exclusive authority, including but not limited to his hiring and firing authority, except for the authorization of the purchase of the peninsula hospital property and buildings previously approved, while the Court considers the additional injunctive relief (the "Injunctive Relief") sought in the instant Complaint attached hereto as Exhibit 1:

- Disbanding the present Board of Directors for their gross breaches of their fiduciary duties and their duties of care and loyalty to Addabbo by, *inter alia*, intentionally violating Addabbo's By-Laws attached hereto as Exhibit 2 and established protocols, intentionally harassing the CEO and his senior management and restricting their exclusive authority, duty and functions under the By-Laws and applicable federal law, and by ignoring and refusing to perform their legal obligations on Addabbo's behalf under applicable federal and state law and regulations;
- Declaring the election of the Board of Directors held on February 29, 2012 null and void as they were conducted in violation of the By-Laws and Articles of Incorporation;
- Appointing a federal receiver to oversee Addabbo until a new board of directors is elected in accordance with Addabbo's By-laws and Articles of Incorporation and all applicable federal and state regulations; and
- Requiring the immediate production of any and all minutes of and documents related to: (a) all Executive Sessions, (b) Board Meetings conducted without proper advance notice to all Board Members, (c) Board Meetings which excluded the CEO/ex-officio Member of the Board of Directors, (d) Board Meetings which

2

secretly, and in violation of the By-Laws initiated an investigation against the CEO and other senior management, and (e) Board Meetings in which decisions were made without the CEO having been noticed or later informed, all during the period from April of 2011 through the present.

### *The Board Intends to Implement Retroactive Policies that Will Cause Imminent Irreparable Harm to Addabbo and the Poor and Indigent Community it Serves*

4.     The urgency and necessity of the instant TRO is precipitated by the Board's stated

intent to adopt and retroactively apply changes in Addabbo policies and Codes of

Conduct at a Board Meeting Scheduled for June 14, 2012, which if carried out would,

*inter alia,* have an immediate significant negative impact on Addabbo's ability to

provide services to the poor and likely result in numerous wrongful termination lawsuits

exposing Addabbo to significant liability.[1] Impact Statement attached hereto as Exhibit 4.

5.     Indeed, the proposed policies will have a potentially devastating and widespread

impact on Addabbo and the Community it serves including:

- The termination of employment of 86 staff members (constituting 27.2% of Addabbo's total staff) significantly impacting Addabbo's ability to provide essential medical services to the community;
- The high probability of exposure and a legal costs to numerous wrongful termination lawsuits from non-union staff and arbitrations with union staff along with high legal costs and potential damages;
- A negative financial impact on Addabbo's funding in the range of $5,000,000 to $6,000,000 over then next two years related to the costs associated with re-hiring 86 replacement staff; the payment of

---

[1] The proposed policy (attached hereto as Exhibit 3) would prohibit any immediate relative of any Senior Manager, Center Senior Manager or Department Manager or anyone who holds a managerial or supervisory position from at any Addabbo facility from working for Addabbo, with the exception of those who have obtained the written consent of the Chairman of the Board. There is nothing presently in the By-Laws, the Articles of Incorporation or under federal state or local law that presently imposes such an imposition. Moreover, by requiring the Chairman of the Board's consent to an exception to this policy, the executive function of the CEO under the By-Laws would be usurped. Finally, this is a blatant power grab by the proponent of this policy, Sylvester Okonkwo, who as discussed below, was illegally elected Chairman of the Board in contravention of the By-Laws.

3

unemployment benefits to the terminated employees (Addabbo is self-insured);

- An additional loss of $14,000,000 combined federal grants and wraparound funding due to the resulting failure to meet federal requirements; and
- A significant disruption of essential medical services to the 35,000 poor and indigent persons in the communities served by Addabbo.

### The Board Elections Held On February 19, 2012, Violated the Addabbo's By-Laws and Articles of Incorporation and are Therefore Null and Void

6.      The election of the Executive Board of Directors held on February 29, 2012 is null and void as they were conducted in violation of the By-Laws and Articles of Incorporation due to the fact that: (i) notice to elect the proposed slate of Executive Directors was  not given in accordance with By-Laws and Articles of Incorporation; and (ii) even had proper notice been given, the Executive Board of Directors were "elected" by vote of a single Board member and not 51% of a quorum of the Board as required by the By-Laws and Articles of Incorporation.

7.      Indeed, all that was arguably noticed properly for the February 29, 2012, Board Meeting, was the selection and approval of the slate of candidates – *and not the election.*

8.      In fact an examination of the Board Agenda for that day evinces that no election was noticed to take place at that meeting. Under the proper procedures required by the By-Laws, the approval of the slate of candidates would necessarily precede any election, which would necessarily need to take place at a properly noticed subsequent meeting.

9.      Even if, *arguendo*, such a subsequent properly noticed election were to take place, all approved candidates for the executive positions up for election would have to be elected by an affirmative vote by 51% of a quorum of the Board – *and not a single Board Member*, as was purported to have been done here.  See Minutes and Board Agenda of February 29, 2012 Board Meeting collectively attached hereto as Exhibit 5. The election

4

of the Executive Board of Directors held on February 29, 2012 is null and void as they were conducted in violation of the By-Laws and Articles of Incorporation.

***Other Violations of the Board's Duties of Care, Loyalty and Obedience to Addabbo, its Violations of Addabbo's By-Law's and the Federal Funding Requirements of the United States Department of Health and Human Services Places Approximately $14,000,000 in Annual Federal Funding in Jeopardy.***

10.     Addabbo receives approximately $14,000,000 annually in Federal Funding from the United States Department of Health and Human Resources (the "HRSA") and failure to comply with the HRSA's requirements can ultimately result in the loss of such funding.

11.     Despite my repeated requests, the Board has exhibited a pattern of unresponsive and reckless behavior by refusing and/or failing to comply with HRSA's requirements to appoint Board Members representative of special classes of patients and geographic areas served by Addabbo, thus placing it in imminent jeopardy of losing its primary source of federal funding. *See* April 27, 2012 email from Sarah Costin, (Public Health Analyst of the HRSA, regarding consequences of Board's failure/refusal to act); *See* the February 18, 2012 Email from Board Member Saywalah Kesselly, (in which he mocks the urgency and the significance of the Board's failure to comply with the HRSA's requirement of appointing Board Members from the Red Hook Community and in the process defames and slanders Mr. Bernstein and I), attached hereto as Exhibits 6 and 7 respectively.

***The Board's Violations of its Duties of Care, Loyalty and Obedience to Addabbo, its Violations of Addabbo's By-Law's and Addabbo's Policies and Procedures Are Motivated By Animus Toward Myself, Certain Dissenting Board Members and My Senior Management Staff By The Illegally Elected Executive Board***

12.     The Board's reckless, intentional and blatant disregard for the best interests of Addabbo intensified in response to my termination of several employees for time card

5

fraud after a thorough investigation carried out by my Chief Compliance Officer and the Corporate Compliance Operations Team at my direction in or about October/November 2011. See attached investigation report attached hereto as Exhibit 8. The termination of three (3) employees was necessary because such fraud violated the anti-fraud rules and regulations of Addabbo's federal and state funding requirements and constituted a crime of theft of services under New York law.

13.     Despite the clear justification for the terminations contained in the investigation report, supported by clear evidence revealed in video surveillance and despite my explanations of the terminations to the Board, the Board never bothered to review the investigative report or discuss its findings with me and rebuffed numerous offers by myself and my Chief Compliance Officer to do so.

14.     Instead, upon information and belief, Board Member Betty Leon, a New York licensed attorney, met in private with Cecilia Salgado, one of the terminated employees, which led to a secret "Executive Meeting," by several members of the Board, led by Betty Leon, and held without notice to all other Board Members, in violation of the procedures set forth in Addabbo's By-Laws and Addabbo's policies and procedures. See Addabbo policy entitled "Responding to Detected Offenses and Developing Appropriate Corrective Action Policy and Procedure," attached hereto as Exhibit 9.

15.     Rather than communicate with me or my Chief Compliance Officer regarding the circumstances surrounding Ms. Salgado termination and her allegations and their impact on Addabbo, the Board authorized the commencement of a secret investigation into the baseless allegations of Ms. Salgado, a disgruntled ex-employee terminated for due cause.

6

thereby placing themselves in the conflicted position of advocating on behalf of Ms. Salgado as opposed to protecting Addabbo's interests.

16.     Significantly, the Board's authorization and execution of the investigation violated the procedures set forth in Addabbo's By-Laws, Addabbo's policies and procedures as well as fundamental principles of Due Process:

- I was never informed of the substance of the allegations against me;
- I was never provided an opportunity to respond to the allegations against me or the status of the pending investigation;
- I was never formerly advised as to the findings of the investigation;
- I have never been formerly advised by the Board that the investigation was concluded or that an investigation report was issued; and significantly
- I was never provided with a copy or the opportunity to review the investigation report *nor advised of the fact that the report did not support a finding of the material misconduct purportedly alleged against myself and my staff and* investigated at the behest of a disgruntled ex-employee who was fired for fraudulent conduct and theft of services that jeopardized Addabbo's federal funding and the best interests of Addabbo and the community it serves.

17.     Moreover, during the course of the investigation, I was repeatedly defamed, libeled and/or slandered, *even accused of criminal conduct*, and I was (and continue to be) consistently treated in a dismissive and hostile manner by certain Members of the Board (and sanctioned by its majority) which significantly undermined the morale and executive authority of myself and my executive staff. Indeed, the Board's conduct during and after the conclusion of the investigation created a hostile work environment, clearly calculated to intimidate and harass my staff as well as myself. *See* attached affidavit of Sanford Bernstein. *See letters* March 28, 2012, Letter from Senior Management to the Board attached hereto as Exhibit 10 respectfully.

18.     Significantly, the defamatory and hostile conduct by certain Members of the Board and sanctioned by the majority, continued after the issuance and in contradiction to

7

the findings of the investigation report. Indeed, Mr. Kesselly continued to defame, libel and slander me with the same allegations that had I had been accused and cleared of.

19.     Beginning in April, the Board, at the direction of Board Chairperson, Sylvester Okonkwo, sent me an agreement to sign in which I would agree (a) not to retaliate against ex-employee Cecilia Salgado (which was perplexing given the fact that she was no longer employed by Addabbo at that time) for her participation in the investigation against me; (b) maintain confidentiality of the complaint against me and any information I learned during the investigation (again, perplexing given the fact that the complaint and investigation were kept secret from me); and (c) not to hire or engage any administrative staff with an annual salary of more than $50,000 or grant raises or bonuses to any Addabbo employee. See April 17, 2012 Letter from Sylvester Okonkwo (the "April 17 Okonkwo Letter") attached hereto Exhibit 11.

20.     Because the April 17 Okonkwo Letter would have stripped me of my executorial powers as CEO, in violation of the By-laws, the Articles of Incorporation and applicable federal regulations, I did not agree to sign and lodged a written objection with the Board.

21.     In or about May of 2012, I learned that the Board, in another secret meeting, held on April 14, 2012, had voted to re-hire Cecilia Salgado, and are conducting secret negotiations with her, in contravention of my hiring/firing authority as CEO and despite her termination for time-card fraud, again, in direct violation of the By-Laws, the Articles of Incorporation, Addabbo's policies and procedures, and in conflict with Addabbo's duty to avoid fraud and theft of services as a recipient of federal funding, and in violation of New York State Fraud and Abuse law.

22. . The Board's conduct evinces a Board acting in contravention of: the Board's fiduciary duty and its duties of care and loyalty to act in Addabbo's best interests, Addabbo's By-Laws and Articles of Organization and all applicable Federal and state laws and thus requires an Order granting the Temporary Restraining Order and other injunctive relief sought hereunder so as to preserve the status quo and avoid imminent irreparable harm to Addabo, its staff and the communities it serves throughout New York City.

**WHEREFORE,** I respectfully request that the court issue the temporary

restraining order and a preliminary injunction as previously described; as well as such

other further relief as may be just proper and equitable.

Dated: Brooklyn, New York
        June 13, 2012

JR. Peter Nelson, Chief Executive Officer
Ex-Officio Board Member
Addabbo Family Health Center, Inc.

SWORN TO BEFORE ME THIS

_13th_ day of , June, 2012

NOTARY PUBLIC

DAVID MOUNIER
Notary Public, State of New York
No. 01MO6038048
Qualified in Kings County
Commission Expires March 20, 2014